# Reservation of all Rights Including the Right to Revise Attached Paperwork

I, Jacob A. [of the Coblentz family] reserve all of my rights including the right to fix any issues with paperwork filed with the court. If administrative issues arise, I reserve and demand the opportunity to fix issues in the interest of Due Process and receiving a fair and impartial hearing.

_____
Jacob A. [of the Coblentz family]
Petitioner in Pro Per/Sui Juris

Jacob A. [of the Coblentz family]
℅ 320 Commons Drive # 106
Parkesburg, Pennsylvania.
Postal Code 19365
717-344-2293
Petitioner in propria persona sui juris

*district court of the united States*

| | |
|---|---|
| **In Re** ) | |
| ) | |
| *Jacob A.* ) | DOCKET No. _____ |
| [of the Coblentz family] ) | |
| ) | |
| ) | |
| *On Habeas Corpus,* ) | *Demand for Right to* |
| ) | |
| ) | *Trial by Jury* |
| ) | |
| ) | *Ordinance of 1787* |
| assisted by *William Henshall* ) | |
| ) | *Article II* |
| *Next Friend* and ) | |
| ) | |
| *Private Attorney General.* ) | |
| _____ ) | |

COMES NOW Jacob A. [of the Coblentz family], a lawful de jure, jus sanguinis, free white Citizen of Pennsylvania, or, in the alternative, an inhabitant of the territory of Pennsylvania, to demand the right to trial by jury according to the course of the common law, right to judicial process and right to the Writ of Habeas Corpus, as *specifically*

secured by *Article II* of the *Northwest Ordinance of 1787*, re-enacted by the 1st Congress at *1 Statutes at Large 50*.

The *Ordinance of 1787* was most conspicuously extended, in all particulars, to the territory of Oregon by the 29th Congress in an *"Act to Provide for the Territorial Government of Oregon", 9 Statutes at Large 323*, enacted August 14th, 1848.

And with the record establishing that Pennsylvania, and indeed, *ALL* of the Several States, having been relegated by Congress and/or the President, on who knows what constitutional authority, to at best, provisional 'states', if not *federal (insular ?) territorial possessions* (see *Exhibit A*, summary, ex parte 'denials' of the application for *NON*-statutory Writs of Habeas Corpus by Private Attorney General (*PAG*) William Henshall; on request, Petitioner will cheerfully present a 40 page, *unopposed*, *Supplementary Brief on the Admission of New States*), the provisions of the *Ordinance of 1787* apply ex proprio vigore to "inhabitants of the territories", and in Pennsylvania notwithstanding its current status.

*Article II* clearly and unambiguously specifies that it is to be a "trial by jury according to the course of the common law", one in which the jury has the power to rule on the facts *and the law* (*Brailsford v Georgia 2 Dallas 402*); Petitioner has *NOT* waived this right, and reminds the 'court' that the prosecutor has the burden of proof to establish that a *"voluntary, knowing and intelligent"* waiver has been made, with this being *THE* reference standard of the supreme Court of the united States for finding such a waiver (*Johnson v Zerbst 304 US 458*) and that no allegedly applicable rules, laws, regulations or *fictions of law* can be used to advance such a theory:

> "Where rights secured by the Constitution are involved, there can be no rule-making or legislation which would abrogate them."

*Miranda v Arizona 384 US 436,491*

Duly noted is that this demand for trial by jury does *NOT* emanate from Section 1 of the *NON*-existent 14th *war* "amendment" to which Petitioner does *NOT* "owe" his "citizenship"*1*, nor does it rely on Article I, Section 16 of the bastardized version of the California Constitution allegedly currently in effect; rather Petitioner relies upon *Article I, Section 3* of the *California Constitution (1849)* which remains in full force and effect (see *Exhibit B*, Affidavit of *PAG* Henshall in support of this claim);

Accordingly, with no reason to believe that such a trial can be provided by the 'court' /aka/ administrative agency, there exists the *sworn duty* to recognize the manifest absence of any jurisdiction in the instant case by a *sua sponte* dismissal, *with prejudice*, of all charges against Petitioner.

_____
Jacob A. [of the Coblentz family]/Petitioner
In Propria Persona -- Sui Juris


_____
William Henshall/Next Friend-
Private Attorney General
*Section 35, Judiciary Act of 1789,
1 Statutes at Large 73*

### Footnotes

1 — see e.g. *Scott v Sandford 19 Howard 393; Minor v Happersett 21 Wall. 162; Van Valkenburg v Brown 43 Cal. 43; Ex Parte Knowles 5 Cal. 300;*

**Jacob A. [of the Coblentz family]**
c/o 320 Commons Drive #106
Parkesburg, Pennsylvania.
Postal Code 19365
717-344-2293
Petitioner in Propria Persona/Sui Juris

## Superior Court of Pennsylvania

| | |
|---|---|
| Commonwealth of Pennsylvania ) ) ) | |
| ) | Case No. 1895-EDA-2020 |
| vs. ) ) | |
| Jacob A [of the Coblentz family] ) as administrator ) ) | ***Supplementary Brief*** |
| For the Trust known as ) ) | ***on Denial of Right to*** |
| JACOB A, COBLENTZ ) ) ) | ***Trial by Jury*** |
| ) | **NOT a 6th Amendment Issue** |
| by ) ) | |
| Next friend-counsel & ) ) | |
| ***Private Attorney General*** ) ) | |
| William Henshall ) ) | |

## Table of Contents

Page

*Statutory Jury "trial" Case Law NOT Relevant*
*ALL State Citizens excluded from Jury Selection Process*
*Trial by Jury as Secured by Magna Charta*
*Supreme Court recognizes duty to construe Constitution in accordance with original intent; Magna Charta*

## Table of Authorities

### Constitution for the united States (1787-1791)

*6th Amendment*

### California Constitution (1849)

*Article I, Section 3*
*Article II, Section 1*

### Decisional Case Law

| Case | Citation |
|---|---|
| Adams v Texas | 448 US 38 |
| Ashwander v TVA | 297 US 288, 341 |
| Batson v Kentucky | 476 US 79 |
| Blanton v Las Vegas | 489 US 538 |
| Brown v Board of Education | 347 US 483 |
| Brown v Mississippi | 297 US 278 |
| Coleman v Thompson | 501 US 722 |
| Connecticut Insurance v Johnson | 303 US 77 |
| Cooper v Aaron | 358 US 1 |
| Eerie RR v Tompkins | 304 US 64 |
| Gideon v Wainwright | 372 US 335 |
| Grossman, Ex Parte | 267 US 87 |
| Hurtado v California | 110 US 516 |
| Kepner v US | 195 US 100 |
| Mattox v US | 156 US 237 |
| Mooney v Holohan | 294 US 103 |
| Neal v Delaware | 103 US 370 |

| | |
|---|---|
| *NLRB v Jones & Laughlin Steel* | *301 US 1* |
| *Oregon v Mitchell* | *400 US 112* |
| *Snyder v Massachusetts* | *291 US 97* |
| *Sparf & Hansen v US* | *156 US 51* |
| *US v Carolene Products* | *304 US 144* |
| *West Coast Hotel v Parrish* | *300 US 379* |
| *Wainwright v Witt* | *469 US 412* |
| *Wickard v Filburn* | *317 US 111* |
| *Witherspoon v Illinois* | *391 US 510* |

*Federal Law*

*Miscellaneous Authorities*

| | |
|---|---|
| *Dissent from adoption of FRCP -- Justices Black & Douglas* | |
| | at *374 US 865; 383 US 1032* |
| *Philip Dru, Administrator* | by Edward Mandell House |
| *Essay on Trial by Jury* | by Lysander Spooner |
| *Ordeal of Edward Bushell* | by Godfrey D. Lehman |
| *Science of Government Founded on Natural Law* | |
| | by Clinton Roosevelt |
| *The Supreme Court in Crisis* | by Merlo J. Pusey |

## *Statutory Jury "trial" Case Law NOT Relevant*

A review of the opinions of the supreme Court in the area of the inalienable right to trial by jury in cases like *Wainwright v Witt 469 US 412, Witherspoon v Illinois 391 US 510* and *Adams v Texas 448 US 38*, all decided under the "stewardship" of that 'hang 'em high hypocrite' Warren E. ~~Bastard~~ Burger, brings one to the realization that this was *NOT* the issue before the Court in these cases or, indeed, *ANY* cases in which the 6th Amendment, as purviewed through the due process clause of the *NON*-existent 14th *war* "amendment" was or is involved.

Accordingly, there are multiple inherent, built in *affirmative* defenses, not to mention structural errors, in any and *ALL* 'criminal' prosecutions, any one of which would establish the lack of jurisdiction in the trial "court" and be grounds for either a *sua sponte* dismissal of all charges with prejudice or, in the alternative, the issuance of a *NON*-statutory Writ of Habeas Corpus and release of the Accused.

This is to say that the Accused has been denied the right to trial by jury *according to the course of the common law* in a *State judicial Court* of common law general jurisdiction in which juries have the *right* to rule on the facts *and the law*.

Now *ALL* of the above cases, and their statutory 'brethren' were only concerned with the 6th Amendment right to trial by jury which, in 'state courts' only applies through the due process clause of the *NON*-existent 14th *war* "amendment", thus making these decisions *easily* distinguishable from the instant case:

> "The Court will not formulate a rule of constitutional law <u>broader</u> than is <u>required</u> by <u>the precise facts to which it is to be applied</u>."
>
> *Ashwander v TVA 297 US 288,341*

Possibly *more important* is the penchant of the Justices on *both* sides of these *statutory* cases to concede that the ""inability" of a juror to be *bound by oath to follow the law*" is, without *apparent* exception, a "valid" ground the "excusing" the juror, even in *capital* cases !

Of course it is well known that (a) there is *no* right to a trial by jury in *at least* a 'criminal' misdemeanor case (*Blanton v Las Vegas 489 US 538* -- and there may be *NO* such right in a capital case, either -- *Brown v Mississippi 297 US 278; Snyder v Massachusetts 291 US 97*), (b) that *ALL* jurors are drawn from "motor-voter" lists which do not, and cannot, include any lawful de jure, jus sanguinis free white State Citizens /aka/ peers of the Accused, [c] with there *NOT* being any States remaining as were once admitted into "*this* Union", there *CANNOT* be any "*impartial* jury of the *State* and *district* wherein the crime shall have been committed*1*" as mandated by the 6th Amendment, even assuming arguendo it may be thought to be applicable to the States.

While it may be true that the *de facto national socialist government* (*DNSG*) *CAN* compel *its* jurors, who "owe" their "citizenship" to Section 1 of the *NON*-existent 14th *war* "amendment", to swear an oath to "faithfully" execute *its* laws (not to mention execute *its victims*), this is wholly inconsistent with the right to trial by jury and the powers of the jurors, the last remaining check and balance on the powers of the *DNSG*.

A singularly noteworthy reference on this subject, is the "*Essay on Trial by Jury*" ("*Essay*") by Lysander Spooner (*1852*); you can Google this all you want in supreme Court cases going back over 100 years (to *at least Sparf & Hansen v US 156 US 51*) without finding any reference to this seminal work, one written during times of when *federative, republican* and *responsible* government was the order of the day.

A more recent, and equally compelling, reference is "*The Ordeal of Edward Bushell*" ("*Bushell*") by Godfrey D. Lehman, is the story of the trial of William Penn and the pain and travails to which the jury that acquitted him was unsuccessfully subjected, thereby disputing the authority of the King and reinforcing the right to trial by jury as understood by the *Magna Charta, the foundation document of all English liberty*.

And from *Witt, Wainwright, Adams supra*, *Batson v Kentucky 476 US 79* and cases going as far back as *Neal v Delaware 103 US 370*, all 6th Amendment cases purviewed through Section 1 of the *NON*-existent 14th *war* "amendment", the courts, and the supreme Court in particular, have shown 'solicitous concern' for the exclusion of "identifiable minorities" from jury selection process, likely a direct result of *Footnote 4* in the *really* infamous case of *US v Carolene Products 304 US 144*, by Justice Harlan Piske Stone, arguably the worst bastard ever on the Court.

### *ALL State Citizens excluded from Jury Selection Process*

Yet today, a group of much more consequence, the members of the sovereign body politic of the Nation & Republic /aka/ members of "*Our* posterity" by whom and for whom all government was ordained and established, are excluded not only from *ANY* jury, but from active participation in any department of the *DNSG*.

This might be all well and good in "trials" owing their 'existence' to the purviewed 6th Amendment, if it were not for the fact that without any States in existence, or State judicial Courts, there is *NO* way for a lawful de jure, jus sanguinis, free white State Citizen, an "inhabitant of a territory', or anyone else, to invoke the *judicial* power of one of the Several States and/or the united States to invoke the right to trial by jury as set forth in the *Magna Charta (1215)*, which was well understood by the

Framers of the Constitution and thus entirely consistent with their *original intent*.

**PAG** Henshall advises that he has prepared a current collection of almost **600** (!) Jury Instructions, very few, if any, which would 'see the light of day' in a statutory "trial", and their denials would be 'judicially' construed as "harmless" error (see e.g. *Mooney v Holohan 294 US 103*; *Coleman v Thompson 501 US 722*; Article VI, Section 13 of the bastardized version of the California Constitution allegedly currently in effect).

This does, however, make perfectly good 'sense' in "trials" in which the only "qualified" jury pool members "owe" their "citizenship" to Section 1 of the *NON*-existent 14th *war* "amendment", particularly in concert with the metamorphosis, albeit a *serpentine sub silentio* 'adjustment', of the relation of *Citizens* to government *from Principal* and agent *to* Guardian and *ward* or, more succinctly put, Master and *slave*, was 'accomplished'.

And when was the last time in recorded history that the inmates were put in charge of the (judicial) 'asylum', let alone any aspect of government ?

### *Trial by Jury as Secured by Magna Charta*

Compare all of this to the trial by jury which should exist, as set forth in Magna Charta with the following decisive differences which make this trial by jury the 'palladium of liberty' which justifiably formed in inherent, and indispensable, part of all English Liberty, to wit:

1. Jurors were sworn by oath to serve, but *NOT* sworn to obey the laws of the King, with the regent effectively exercising all powers of government at his sole pleasure, with the following excerpts from "*Essay*" at ppg 85 et seq.:

at page 86

> "12 Freeholders were chosen, who having sworn with the hundreder, or presiding magistrate of the division, to administer *impartial* justice, proceeded to the examination of that cause which was submitted to their jurisdiction."

> "By a law of Henry II, in 1164, it was directed that the Sheriff (Latin omitted) shall make 12 legal men from the neighborhood to swear that they will make known *according to their consciences*."

*the truth*

at page 88

> "It appears from Blackstone that even at this day, neither civil nor criminal cases are jurors in England sworn to decide according to the law. He says that in civil are:

*cases, jurors*

> 'sworn to well and fully to try the issue between the parties and a true verdict give according to the evidence.'

> "The issue" to be tried is whether A owes B anything and, if so, how much ... or whether A has wronged B and ought to make compensation.

> No statute passed by a legislature, simply as a legislature, can alter either of these issues in hardly any conceivable case, perhaps in none. No unjust law could ever alter them in any way. They are all questions of natural justice, which the legislature have no alter and which they have no right to interfere, further than to have them settled most competent and impartial tribunal that it is practicable to have, and then for all just decisions enforced.

*power to*
*by the*
*having*

Pursuant to the Limitations on Majority Rule by Magna Charta, from Page 206 of "*Essay*" comes the *crucial* guarantee of trial by Jury:

> "The principal objection that will be made to the doctrine of this essay is, that under it, a jury would paralyze the power of the majority, and veto all legislation that was not in accordance with the will of the whole, or nearly the whole, people.

> The answer to this objection is, that the limitation which would be thus imposed upon the legislative power (whether that power is vested in a majority, or minority, of people), is the *crowning merit* of the trial by jury. It has other merits; but, though important in themselves, *they are utterly insignificant and worthless in with this*.

*the*

*comparison*

> It is this power of vetoing all partial and oppressive legislation, and of restricting the government to maintenance of laws as the whole, or substantially the whole, agreed in, that makes the trial by jury the "palladium of liberty". *Without would never have deserved that name*.

*people are*
*this power it*

        The will, or the *pretended* will, of the majority, is the *last lurking place of the tyranny* at the present day. The dogma, that certain individuals and families have a *divine* appointment to govern the rest of mankind, is fast giving place to the one that a *larger* number have a right to govern the smaller; a dogma, which may or may *not*, be *less* oppressive in its practical operation, but which is certainly *no less false or tyrannical* in principle than the one it is so rapidly supplanting."

## *Supreme Court recognizes duty to construe Constitution in accordance with original intent; Magna Charta*

        This is easily demonstrated be recitation of excerpts from the following decisions of the Court:

        "We are bound to interpret the Constitution in the light of the law *as it existed at the time it was adopted*, not as reaching out for new guaranties of the rights of the citizen, but as securing to every individual such as he already possessed as a *British* subject, such as *his ancestors* had inherited and defended since *the days of Magna Charta*."

        *Mattox v US  156 US 237*

    and

        "The language of the Constitution cannot be interpreted safely *except by* reference to the common law and to the *British institutions as they were when the instrument was framed and adopted*. The statesmen and lawyers of the Convention who submitted it to the ratification of the Convention of the Thirteen States, were born and brought up in the *atmosphere of the common law*, and *thought and spoke in it's vocabulary*. They were familiar with other forms of government, recent and ancient, and indicated in their discussions earnest study and consideration of many of them, but when they came to put their conclusions into the form of fundamental law in a compact draft, they expressed them in terms of *common law*, confident that they could be shortly and easily understood."

        *Ex Parte Grossman  267 US  87*

    and

        "The language of the Constitution as has been well said, could not be understood *without reference to the common law*."

        *Kepner v US  195 US  100*

While it may be true that the supreme Court has not, alas, recently (for *80 years* or so !) been in the habit of deciding questions of the type arising in the instant case, their own self promulgated "*Ashwander Doctrine*" for status and standing, *Ashwander v TVA 297 US 288,341*, the rules themselves reveal the key to securing review, and/or the authority to present such questions to a common law jury:

1. "The Court will *NOT* anticipate a question of constitutional law in *advance of the necessity of deciding it*."

2. "The Court will *not* formulate a rule of constitutional law *broader than is required by the precise facts to which it is to be applied*."

Also well worthy of note is the *sole* (!) dissent of Justice Black in *Connecticut Insurance v Johnson 303 US 77* in his first (!) term on the Court, with all these actions comfortably in line with the keen observation of T.S. Eliot that:

> "The last temptation is the greatest treason
> to do the right thing for the *wrong* reason."

Which in turn typifies the evils engendered when the Court departs from its role to *say what the law is*, engaging in 'judicial' activism to 'create new 'law, often out of thin air (see e.g. *West Coast Hotel v Parrish 300 US 379; NLRB v Jones & Laughlin Steel 301 US 1; Eerie RR v Tompkins 304 US 64; Wickard v Filburn 317 US 111; Brown v Board of Education 347 US 483; Cooper v Aaron 358 US 1*), while at the same time, often under *extreme duress and coercion*, most particularly 'courtesy' of the 'court-packing' plan of Fascist Dictator *Roosenvelt ("The Supreme Court in Crisis" -- Merlo J. Pusey)*, likely at the behest of his bosses in the environs of 120 Broadway, New York, NY, and perhaps in response to Cousin Clinton Roosevelt's "*Science of Government Founded on Natural Law*" (1840), seemingly the philosophical forerunner of the "*Communist Manifesto*" (1848)2. Was Karl Marx a plagiarist ??

_____
Jacob A. [of the Coblentz family]/Petitioner
In Propria Persona/Sui Juris


_____
William Henshall - Private Attorney General
Section 35, Judiciary Act of 1789

©     William Henshall

## *Footnotes*

1 --    it is a matter of no little concern here that this language assumes that a crime *has* been committed, most particularly in the absence of a Grand Jury indictment, albeit *not* a "due process" requirement of the    6th Amendment as purviewed through Section 1 of the *NON-*    existent 14th *war* "amendment" (see e.g. *Hurtado v California 110 US 516*), especially in    concert with the *totally unsupportable* presumption of "regularity" in proceedings and/or    constitutionality of a given law(s) used in a prosecution;

2 --    Was Edward Mandell House similarly influenced when writing *"Philip Dru, Administrator"* ??

3 --    and this is true a fortiori in a *de facto territorial* legislature in which neither the status and    standing of the members of the sovereign body politic, and/or their *Creator endowed inalienable rights* are recognized, a legislature in which they are *NOT* "qualified" to hold office, *NOR* "qualified" to vote and in which *all* members of such legislature, "owing" their "citizenship" to Section 1 of the *NON*-existent 14th *war* "amendment" have *irreconcilable conflicts of interest* with those with whom they are, very arguably, engaged in a    *state of war* !